# <u>EXHIBIT 1</u>
**TO THE NOTICE OF REMOVAL**
*ORIGINAL COMPLAINT FILED IN STATE COURT*

Sarah R. Schalman-Bergen (Pa Bar No. 206211)
Krysten Connon (Pa Bar No. 314190)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(267) 256-9973
ssb@llrlaw.com
kconnon@llrlaw.com

*Additional Counsel Listed on Signature Page*



*Filed and Attested by the
Office of Judicial Records
13 OCT 2021 01:52 pm
S. RICE*

|  |  |  |
|---|---|---|
| JENNIFER VILLA, on behalf of herself and others similarly situated, | : : : | PHILADELPHIA COUNTY COURT OF COMMON PLEAS |
| Plaintiff, | : | |
| v. | : : | OCTOBER TERM, 2021 |
| CARGILL MEAT SOLUTIONS CORPORATION, | : : : | CLASS ACTION |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT – CLASS ACTION
### 10- Contract: Other

| NOTICE | AVISO |
|---|---|
| **You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.** *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* **Philadelphia Bar Association Lawyer Referral and Information Service 1101 Market Street, 11th Floor Philadelphia, Pennsylvania 19107 (215) 238-1701** | **Le han demandado a usted en la corte. Si usted quier defenderse de estas demandas expuestas en las pagina siguientes, usted tiene veinte (20) dias de plazo al partir de l fecha de la demanda y la notificacion. Hace falta ascentar un comparencia escrita o en persona o con un abogado entregar a la corte en forma escrita sus defensas o su objeciones a las demandas en contra de su persona. Se avisado que si usted no se defiende, la corte tomara medida y puede continuar la demanda en contra suya sin previo avis o notificacion. Ademas, la corte puede decidir a favor de demandante y requiere que usted cumpla con todas la provisiones de esta demanda. Usted puede perder dinero sus propiedades u otros derechos importantes para usted.** *Lleve esta demanda a un abogado immediatamente. Si no tien abogado o si no tiene el dinero suficiente de pagar tal servicio Vaya en persona o llame por telefono a la oficina cuy direccion se encuentra escrita abajo para averiguar donde s puede conseguir asistencia legal.* **Asociacion De Licenciados De Filadelfia Servicio De Referencia E Informacion Legal 1101 Market Street, 11th Floor Filadelfia, Pennsylvania 19107 (215) 238-1701** |

Case ID: 211001004

Jennifer Villa ("Plaintiff") brings this class action lawsuit against Cargill Meat Solutions Corporation ("Cargill"), seeking all available relief under the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq*.  She alleges the following:

## JURISDICTION AND VENUE

1.      This Court has personal jurisdiction over Cargill.

2.      Venue in this Court is proper under Pennsylvania Rules of Civil Procedure 1006 and 2179 because Cargill regularly conducts business in Philadelphia County. *See Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 971 (Pa. Super. Ct. 2009). This includes, *inter alia*, the continuous and regular sale of product and/or merchandise to customers located in Philadelphia County.

## PARTIES

3.      Plaintiff is an individual residing in McAdoo, Pennsylvania.

4.      Cargill is a limited liability corporation headquartered in Wichita, Kansas and registered to do business in the Commonwealth of Pennsylvania.

## FACTS

5.      There have been more than 40 million confirmed cases of Coronavirus ("COVID") in the United States, causing the death of more than 700,000 Americans. In Pennsylvania alone, there are more than 1.4 million confirmed cases and more than 29,500 deaths due to COVID.  (*See* https://coronavirus.jhu.edu/map.html, last visited October 4, 2021).

6.      The COVID pandemic has caused a particularly negative impact on the meatpacking industry, where employers require workers in these facilities to stand close together on processing lines in order to perform their jobs, preventing workers from engaging in meaningful social distancing.

Case ID: 211001004

7. COVID outbreaks in meatpacking plants have negatively impacted the profitability of such companies, and have caused plant closures and shutdown of production.

8. In addition, ensuring continuous production of meatpacking facilities is critical to the prospering functioning of the food supply chain, and the health and prosperity of the country.

9. To that end, on April 28, 2020, former President Trump issued an executive order designating meat and poultry processing facilities as critical infrastructure under the Defense Production Act, stating as follows:

> It is important that processors of beef, pork, and poultry (''meat and poultry'') in the food supply chain continue operating and fulfilling orders to ensure a continued supply of protein for Americans. However, outbreaks of COVID– 19 among workers at some processing facilities have led to the reduction in some of those facilities' production capacity. In addition, recent actions in some States have led to the complete closure of some large processing facilities. …
>
> Such closures threaten the continued functioning of the national meat and poultry supply chain, undermining critical infrastructure during the national emergency. Given the high volume of meat and poultry processed by many facilities, any unnecessary closures can quickly have a large effect on the food supply chain. For example, closure of a single large beef processing facility can result in the loss of over 10 million individual servings of beef in a single day. Similarly, under established supply chains, closure of a single meat or poultry processing facility can severely disrupt the supply of protein to an entire grocery store chain.
>
> Accordingly, I find that meat and poultry in the food supply chain meet the criteria specified in section 101(b) of the Act (50 U.S.C. 4511(b)). Under the delegation of authority provided in this order, the Secretary of Agriculture shall take all appropriate action under that section to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA.

*See* Executive Order 13917 of April 28, 2020, 85 Fed. Reg. 85 (May 1, 2020).

10. Cargill is a leading processor and distributor of fresh beef, pork and turkey, as well as cooked and marinated meats.

11. Cargill has processing plants, distribution centers and sales offices throughout the world, including in Pennsylvania.

12. Cargill has profited handsomely by operating throughout the COVID pandemic.

3

Case ID: 211001004

*See*, *e.g.*, "Crop Giant Cargill Reports Biggest Profit in 156-Year History," *Bloomberg News* (Aug. 6, 2021) (available at https://www.bloombergquint.com/onweb/crop-giant-cargill-reports-biggest-profit-in-156-year-history)

13.    Cargill owns and operates two primary plants in Pennsylvania – the Hazleton plant, and the Wyalusing plant (collectively, the "Pennsylvania Plants").

14.    Cargill employs production workers at each of the Pennsylvania Plants, who perform manual labor associated with its meat processing and packing operations.  These workers are referred to throughout as "Production Workers."

15.    Production Workers are employed by Cargill, are paid an hourly wage, and are not exempt from the wage and hour requirements set forth in the Pennsylvania Minimum Wage Act.

16.    Following the outbreak of the COVID, including a major outbreak at the Hazleton Plant, Cargill implemented a company-wide policy requiring each of its Production Workers to undergo a COVID screening process for symptoms of Coronavirus prior to each shift and before the end of their lunch break.

17.    Production Workers were required to arrive at the facility to undergo a COVID screening process conducted by Cargill.

18.    Production Workers were required to wait in line to undergo the COVID screening process.

19.    Production Workers could be subject to discipline if they did not arrive ready at the work station in time for their production work to start.  Accordingly, the addition of the COVID screening process required Production Workers to arrive at work earlier than they had before the implementation of the examinations.  Such time was uncompensated.

Case ID: 211001004

20. The COVID screening process was imposed by Cargill as a requirement to work each shift.

21. The COVID screening process was conducted, and was required to be conducted, on the premises of Cargill.

22. The COVID screening process was necessary for the safe and effective operations of Cargill's business.

23. The COVID screening process was not implemented for the convenience of the Production Workers.

24. Following the required COVID screening process, Production Workers were required to gather, don, and doff personalized protective equipment ("PPE"), as well as to walk from their locker room to and from their work stations in order to perform their job.

25. Plaintiff and Production Workers were not paid for significant amounts of time between the start of the required COVID screening process, and when they were clocked in for pay purposes.

26. Prior to returning from lunch, Production Workers are required to undergo an additional COVID screening process, and as a result, Production Workers rarely were able to take a fully relieved lunch break of thirty minutes or more.

27. Due to this additional COVID screening process requirement, Production Workers were not allowed time for meals.

28. Cargill failed to pay for all hours the Production Workers worked, beginning with the time Production Workers were required to be on Cargill's premises to undergo the COVID screening process until they were clocked in, in violation of Pennsylvania law.

29. Cargill further failed to provide Plaintiff and Production Workers with a full lunch

5

Case ID: 211001004

break of thirty minutes or more, and such time should have been paid pursuant to Pennsylvania law.

30.     Plaintiff worked for Cargill as a Production Worker in the Hazleton Plant from approximately May 2019 through approximately November 2020.

31.     Plaintiff typically worked five days per week, and was paid for approximately 40-55 hours per week, depending on the work week.

32.     Plaintiff and Production Workers routinely worked 40 or more hours per week. For example, Plaintiff estimates that she often worked at least 42 hours or more per week.

33.     Cargill failed to pay Production Workers for all hours worked as defined in the PMWA. *See Heimbach v. Amazon.com, Inc.*, 255 A.3d 191, 209 (Pa. 2021).

## CLASS ALLEGATIONS

37.     Plaintiff brings this lawsuit as a class action.  She sues on behalf of production workers who reside in Pennsylvania and, during any week within the relevant time period, were employed by Cargill at a Pennsylvania Plant and paid an hourly wage.

38.     This action may be properly maintained as a class action pursuant to Pennsylvania Rules of Civil Procedure 1702, 1708, and 1709. Class action treatment of Plaintiff's PMWA claim is appropriate because, as alleged below, all of Pennsylvania class action requisites are satisfied.

39.     The class, upon information and belief, includes thousands of individuals, all of whom are readily ascertainable based on Cargill's business records and are so numerous that joinder of all class members is impracticable.

40.     Plaintiff is a class member, her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of other

6

Case ID: 211001004

class members.

41.     Plaintiff and her lawyers will fairly and adequately represent the class members and their interests because, *inter alia*, (a) Plaintiff is represented by experienced class action counsel who are well-prepared to vigorously and competently litigate this action on behalf of the class; (b) Plaintiff and her counsel are free of any conflicts of interest that prevent them from pursuing this action on behalf of the class; and (c) Plaintiff and her counsel have adequate financial resources to assure that the interests of the class will not be harmed.

42.     Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Cargill's common timekeeping, payroll, and compensation policies, as described herein.  The legality of these policies will be determined through the application of generally applicable legal principles to common facts.

43.     A class action provides a fair and efficient method for adjudication of the controversy because, *inter alia*, the previously mentioned common questions of law and fact predominate over any questions affecting Plaintiff or any individual class member; the monetary damages sought are readily calculatable and attributable to class members; maintenance of the instant litigation protects against the risk of inconsistent or varying adjudications that might result if individual class members were to commence independent actions in various courthouses throughout the Commonwealth.

44.     Because Cargill conducts a substantial amount of business in Philadelphia County, this Court is an appropriate forum for the litigation of the claims of the entire class.

45.     The complexities of the issues and the expense of litigating separate claims of individual class members weigh in favor of class certification.  For example, in the instant action, Plaintiff will seek and present evidence concerning Defendant's common timekeeping,

Case ID: 211001004

compensation, and payroll practices. The gathering and presentation of such evidence in multiple

proceedings would be inefficient, redundant, and unjustifiably expensive.  The class action

device, when compared to multiple proceedings, presents far fewer management difficulties and

provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision

by a single court. Concentrating this litigation in one forum promotes judicial economy and

efficiency and promotes parity among the claims of individual class members as well as judicial

consistency. Thus, the conduct of this action as a class action conserves the resources of the

parties and the court system, protects the rights of each class member, and meets all due process

requirements as to fairness to Cargill.

**COUNT I**

46.     All previous paragraphs are incorporated as though fully set forth herein.

47.     Cargill is an employer covered by the PMWA's mandates.

48.     Plaintiff and the class members are employees entitled to the PMWA's

protections.

49.     The PMWA entitles employees to compensation for "all hours worked" in a

workweek.  *See* 43 P.S. § 333.104(a).  Such compensable time includes, *inter alia*, all "time

during which an employee is required by the employer to be on the premises of the employer,"

*id.*, and must be paid "regardless of whether the employee is actually performing job-related

duties while on the premises," *Heimbach*, 255 A.3d at 204.

50.     The PMWA requires that employees receive overtime compensation "not less

than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a

workweek.  *See* 43 P.S. § 333.104(c).

51.     Cargill violated the PMWA by failing to pay Plaintiff and other class members

8

Case ID: 211001004

overtime premium compensation for time during which Plaintiff and other class members are required to be at the facility without receiving payroll credit.  Such time includes: (i) the time accrued between the commencement of the COVID screening process and the time at which the class members start being paid; and (ii) the time during the 30-minute unpaid meal break when Plaintiff and other class members were not fully relieved and required to be on the premises, and were not allowed time for meals.

## JURY DEMAND

Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the class, seeks the following relief: (i) unpaid wages (including overtime wages); (ii) prejudgment interest; (iii) litigation costs, expenses, and attorney's fees; and (iv) any other and further relief this Court deems just and proper.

Date:  October 13, 2021

Respectfully submitted,

_____
Sarah R. Schalman-Bergen
(Pa Bar No. 206211)
Krysten Connon
(Pa Bar No. 314190)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA  02116
(267) 256-9973
ssb@llrlaw.com
kconnon@llrlaw.com

9

Case ID: 211001004

Peter Winebrake
(Pa Bar No. 80496)
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491
pwinebrake@winebrakelaw.com

Marielle Macher
(Pa Bar No. 318142)
DeJonna Bates
(Pa Bar No. 328299)
Community Justice Project
118 Locust Street
Harrisburg, PA 17101
717-236-9486, ext. 214
mmacher@cjplaw.org
dbates@cjplaw.org

10

Case ID: 211001004

## VERIFICATION

I, Jennifer Villa, hereby state:

1.      I am a plaintiff in this action;

2.      I verify that the statements made in the accompanying complaint are true and correct to the best of my knowledge, information and belief; and

3.      I understand that the statements in the complaint are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsifications to authorities.

Dated: 10/8/2021