**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JENNIFER VILLA and SUSAN DAVIDSON, o/b/o themselves and others similarly situated,** | : | |
| | : | |
| | : | |
| | : | **CIVIL ACTION NO. 3:22-CV-1321** |
| **Plaintiffs,** | : | |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **CARGILL MEAT SOLUTIONS CORP.,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

Presently before the Court is Plaintiffs' Motion for Class Certification (Doc. 36). In the underlying action, Plaintiffs seek relief on behalf of themselves and others similarly situated from Defendant Cargill Meat Solutions Corp. ("Cargill" "CMSC") under the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. C.S. §§ 333.101, et seq. (*See* Am. Compl., Doc. 1-11 at 2.)

Plaintiffs originally filed this action in the Philadelphia County Court of Common Pleas on October 13, 2021. (Notice of Removal, Doc. 1 ¶ 4.) On July 12, 2022, Plaintiffs filed an Amended Complaint (Doc. 1-11). Defendant filed a Notice of Removal in the United States District Court for the Eastern District of Pennsylvania on August 8, 2022. (Doc. 1.) Defendant removed the case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), which gives this Court original jurisdiction over any civil action that: (a) is

a class action with a putative class of more than one hundred members; (b) in which any member of a class of plaintiffs is a citizen of a State different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. (Doc. 1 ¶ 8.) The case was transferred to this Court on August 22, 2022, after the parties agreed that venue in the Middle District of Pennsylvania was proper. (*See* Doc. 11.)

In their Amended Complaint, Plaintiffs allege that Defendant "has violated the PMWA by failing to pay overtime wages for time associated with various required activities arising before employees 'punch-in' and after the 'punch-out' for payroll purposes." (Doc. 1-11 at 2.) Specifically, Plaintiffs point to the time associated with the COVID screening process and the time spent walking to and from timeclocks within the plants. (*See, e.g.*, *id.* ¶¶ 25, 26.)

With the pending Motion, Plaintiffs first ask the Court to certify the proposed class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). (Doc. 36 at 1.) The proposed class is defined as follows: "All production workers who, during any week since July 12, 2019, were employed by Cargill at a Pennsylvania Plant, paid an hourly wage, and paid for working 40 or more hours during at least one week." (*Id*.) Plaintiffs also ask the Court to appoint Winebrake & Santillo, LLC, the Community Justice Project, and Lichten & Liss-Riordan, P.C., as class counsel. (*Id* at 2.) Finally, Plaintiffs ask the Court to approve both the "Notice of Class Action Lawsuit" form attached as Exhibit A and the class notice protocols and procedures detailed at in their supporting brief. (*Id.*)

2

Defendant generally opposes certification because Plaintiffs bring this action "in an effort to expand Pennsylvania law well beyond the legislature's intent." (Def.'s Opp'n Br., Doc. 41 at 1.) Defendant also alleges that Plaintiffs cannot meet the requirements for class certification because the class is overly broad and fails to satisfy the commonality and typicality requirements of Rule 23(a). (*Id.* at 2.)

For the reasons that follow, the Court will grant Plaintiffs' Motion.

## II. BACKGROUND

Cargill operates three facilities in Pennsylvania for processing and distributing meat. (Pls.' Supp. Br., Doc. 37 at 4; Def.s' Opp'n Br., Doc. 41 at 2.) The facilities are located in Wyalusing, Hazleton, and Camp Hill. (*Id.*) Cargill states that "[t]he headcount for production workers in all three plants named in the Amended Complaint, for the time frame asserted in the Amended Complaint, exceeds 3,000 employees." (Doc. 1 ¶ 11.)

Cargill pays its hourly employees from the time they punch in to the time they punch out ("punch-to-punch") at their appropriate stations. (Doc. 37 at 5 & n.11; Doc. 41 at 1.) The timeclocks are located at or near the employee's assigned department within the plant. (Doc. 37 at 5.)

In March 2020, Cargill implemented COVID-related measures that included temperature screening for all who entered the worksite and required disclosure of any COVID symptoms. (Def.'s Ans., Doc. 6 ¶¶ 17, 21; Pls.' Ex. H.) In September 2021, Cargill reported that it had developed screening questions that were asked before entering its

3

protein plants and it had initiated temperature screening for employees at arrival. (Doc. 37 at 7; Pls.' Ex. J, Doc. 36-12 at 4.) On April 24, 2022, Cargill drafted the "COVID-19 Active Screening and Temperature Scans Process – US Protein" ("Screening Directive") and distributed it to the three Pennsylvania facilities. (Doc. 41 at 3; Pls.' Reply Br., Doc. 42 at 4; Pls.' Ex. G, Doc. 38-1.)

COVID screening took place before employees punched-in at the timeclocks inside the plants. (Doc. 37 at 8.) Cargill did not compensate employees for time associated with the screening process. (*Id.*) Cargill did not document or track any time related to employees' participation in the COVID screening process. (*Id.*)

Regarding time spent walking within the plants to the assigned timeclock, employees are not paid until they punch in at the timeclock so they are not paid for the time spent walking to the timeclock. (Doc. 37 at 9.) Similarly, they are not paid from the time they punch out at the timeclock to when they exit the facility. (*Id.*)

### III. ANALYSIS

As set out above, in the underlying action, Plaintiffs request relief based on the Pennsylvania Minimum Wage Act ("PMWA"). They assert that Cargill violated the PMWA by failing to pay Plaintiffs and other class members overtime premium compensation for the COVID screening time and walking time set out above. (*See, e.g.*, Doc. 1-11 ¶ 46.) The entitlement to relief is based on the following summary argument:

4

The PMWA entitles employees to compensation for "all hours worked" in a workweek. *See* 43 P.S. § 333.104(a). Such compensable time includes, inter alia, all "time during which an employee is required by the employer to be on the premises of the employer," *id.*, and must be paid "regardless of whether the employee is actually performing job-related duties while on the premises," *Heimbach* [*v. Amazon*, 255 A.3d 191, 204 (Pa. 2021)].

The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).

(Doc. 1-11 ¶¶ 44-45.)[1]

---

[1] In their brief supporting the pending Motion, Plaintiffs expand their argument that the time associated with the identified activities is compensable under the PMWA's "hours worked" regulation as interpreted in *Heimbach v. Amazon.com, Inc.*, 225 A.3d 191 (Pa. 2021):

In *Heimbach* . . . , the Pennsylvania Supreme Court considered "whether time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening is compensable as 'hours worked' within the meaning of the [PMWA]." *Id.* at 192-93. In answering this question, the Court explained that the PMWA's definition of "Hours worked" must be interpreted liberally in favor of workers and without regard to the "Portal-to-Portal" restrictions applicable to the federal Fair Labor Standards Act ("FLSA"). *See id.* at 200-03. The Court then found that the security screening time is compensable under the PMWA. *See id.* at 204. Crucially, the Court set forth a general rule that the PMWA's conception of compensable "hours worked" includes "*all 'time during which an employee is required by the employer to be on the premises of the employer' as compensable hours worked, regardless of whether the employee is actually performing job-related duties while on the premises.*" *Id.* (emphasis supplied).

(Doc. 37 at 8.)

Defendant disputes the propriety of Plaintiffs' reliance on *Heimbach*. (*See, e.g.*, Doc. 41 at 10-11.) Regarding COVID screening time, Defendant's position is that "*Heimbach* does not apply to a temporary global pandemic requirement meant to keep the people and communities of the Commonwealth of Pennsylvania safe" (Doc. 41 at 10.) Defendant also argues that walking time is not compensable under *Heimbach* and 34 Pa. Code 231.1. (*Id.* at 11.)

As a general matter, the Court need not assess the parties' positions on the legal sufficiency of Plaintiffs' claims generally or the applicability of *Heimbach* specifically. In *Gonzalez v. Corning*, 885 F.3d 186 (3d Cir. 2018), the Third Circuit summarized the Supreme Court's consideration of the issue of a merits analysis at the Rule 23 certification stage set out in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013):

In seeking to certify the class of "[a]ll production workers who, during any week since

July 12, 2019, were employed by Cargill at a Pennsylvania Plant, paid an hourly wage, and

paid for working 40 or more hours during at least one week" (Doc. 36 at 1), Plaintiffs assert

that the class should be certified, pursuant to Federal Rule of Civil Procedure 23(b)(3)

"because each requirement described in Rule 23(a) and 23(b)(3) is satisfied." (Doc. 37 at

11.)

Defendant responds that Plaintiffs cannot meet the requirements for class

certification:

> Their unified class representing both (1) employees who went through
> screening and (2) employees who spent time walking from the entrance of the
> building to their time clocks at the start of the day and from the clocks to the
> exit of the building at the end of the day ("walking time") is overly-broad and

---

In *Amgen*, the Supreme Court cautioned district courts not to "put[ ] the cart before the horse"
by allowing their views of the merits to affect their analysis of the independent question
whether a putative class satisfies the requirements of Rule 23. 568 U.S. at 460, 133 S.Ct.
1184. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather,
it is to select the method best suited to adjudication of the controversy fairly and efficiently."
*Id.* (alteration and internal quotation marks omitted). While in some cases it may be inevitable
that the class-certification analysis "entail some overlap with the merits of the plaintiff's
underlying claim," *id.* at 465–66, 133 S.Ct. 1184 (quoting *Dukes*, 564 U.S. at 351, 131 S.Ct.
2541), as a general matter, "Rule 23 grants courts no license to engage in free-ranging
merits inquiries at the certification stage." *Id.* at 466, 133 S.Ct. 1184.

*Gonzalez*, 885 F.3d at 200.

Because "[m]erits questions may be considered to the extent—but only to the extent—that they are
relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Amgen*, 568
U.S. at 466 (citing *Dukes*, 564 U.S. at 351 n. 6), the Court will only address the parties' merits arguments
and application of *Heimbach* if relevant to a Rule 23 requirement.

fails to satisfy the commonality and typicality requirements of Fed. R. Civ. P 23(a) and the predominance or superiority prongs of Rule 23(b).

(Doc. 41 at 2.)

To certify a class, the Court must proceed in two steps under Rule 23. First, Rule 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

If all of Rule 23(a) requirements are satisfied, the Court will proceed to Rule 23(b), which provides, in relevant part, that a class action may be maintained if Rule 23(a) is satisfied and if

the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The burden to prove compliance with Rule 23 is upon the party seeking class certification, who "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The burden is "not merely a threshold showing." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), *as amended* (Jan. 16, 2009); *see also Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard."). Factual determinations in this context "must be made by a preponderance of the evidence." *In re Hydrogen Peroxide*, 552 F.3d at 305.

All cases involving class certification questions necessitate a "thorough examination of the factual and legal allegations." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001), *as amended* (Oct. 16, 2001). In "decid[ing] which facts and legal arguments are most important to each Rule 23 requirement, [the trial court] possesses broad discretion to control proceedings and frame issues for consideration under Rule 23." *In re Hydrogen Peroxide*, 552 F.3d at 310 (citing *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 630 (1997)). However, this discretion "does not soften the rule [that] a class may not be certified without a finding that each Rule 23 requirement is met." *Id.* In some cases, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

## A. RULE 23(a)

### 1. Numerosity

The numerosity requirement for a proposed class is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Judicial economy is a core purpose of the numerosity requirement. *In re Modafinil Antitrust Litig.*, 837 F.3d 328, 252-53 (3d Cir. 2016.) Though there is no minimum number of class members required, generally joinder is presumed impracticable "when the potential number of class members exceeds 40." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022).

Here, Plaintiffs assert that "numerosity is confirmed by Cargill's representation that the proposed class 'exceeds 3000 employees.'" (Doc. 37 at 13 (quoting Doc. 1 at ¶ 11).) Plaintiffs also assert that "each class member is easily identifiable based on Cargill's standardized payroll records." (*Id.*) Defendant does not contest numerosity. Given Plaintiffs' uncontested assertion that the proposed class far exceeds the presumptive minimum of forty, the Court concludes that the numerosity requirement is satisfied.

9

## 2. Commonality

The commonality requirement necessitates that a plaintiff prove "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In order to meet the commonality requirement, the putative class must raise common contentions capable of classwide resolution. *Dukes*, 564 U.S. at 350. The focus is not on the "raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original). If the issue is common to the class, the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Commonality is satisfied if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013); *see also Dukes*, 564 U.S. at 359 ("[E]ven a single common question will do."). In evaluating commonality, "the bar is not a high one." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). The focus for the Court is "not on the strength of each class member's claims but instead on whether the defendant's conduct was common as to all of the class members." *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015) (internal quotations omitted). As long as the class was subjected to the "same harmful conduct by the defendant, Rule 23(a) will endure many legal and factual differences among the putative class members." *Id.; see also*

10

*Rodriguez*, 726 F.3d at 382-83 (collecting Third Circuit cases focusing on the commonality inquiry on the defendant's conduct).

Plaintiffs contend that the commonality requirement is easily satisfied because "Plaintiffs and every other class member are bound together by a common and overarching legal issue: whether time associated with pre-shift COVID screenings and pre-shift and post-shift walking to and from intra-plant timeclocks qualifies as compensable 'hours worked' under the PMWA." (Doc. 37 at 14.) For purposes of Rule 23 certification, this "overarching legal issue" contains two subparts: 1) failure to pay for COVID related screening and 2) failure to pay for time spent walking to and from timeclocks. Thus, for purposes of the commonality inquiry, the Court will exercise its discretion to "frame issues for consideration under Rule 23," *In re Hydrogen Peroxide*, 552 F.3d at 310, and analyze two "common questions," *see supra* p. 9: 1) whether time associated with pre-shift COVID screenings qualifies as compensable "hours worked" under the PMWA"; and 2) whether time associated with pre-shift and post-shift walking to and from intra-plant timeclocks qualifies as compensable "hours worked" under the PMWA.

In response to Plaintiffs' commonality argument, Defendant presents numerous arguments why Plaintiffs have not met the commonality requirement. First, Defendant cites two district court cases which found a lack of commonality. (Doc. 41 at 13-14 (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, Civ. A. No. 98-CV-1241, 1999 WL 554591, at *6 (E.D. Pa. June 30, 1999) aff'd in part, rev'd in part, 213 F.3d 124 (3d Cir. 2000)

11

("[c]ommonality will not be found where the alleged common issues can only be resolved by making factual determinations that will be different for each class member."); *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 598 (M.D. Pa. 1997) (finding that commonality was destroyed even if there were common claims when "such issues are altered or changed by the individual facts and situation of each plaintiff.")).

Defendant's reliance on these district court cases is misplaced. In *Holmes*, the court found that the plaintiffs' "stated common issues were not in fact common": one issue was moot because it was administratively resolved as to the named plaintiffs before the plaintiffs filed their complaint, 1999 WL 554591, at *6; two alleged common issues were based on a claim that the court had previously dismissed for jurisdictional reasons and were, therefore, no longer relevant to the issues remaining before the court, *id.* at 7; and the final alleged common issue involved claims for interest under ERISA which would require the court to make individualized assessments of each claim because the recognized remedy is equitable in nature, i.e., the Court would have to examine the individual facts behind each claim, balance the equities, and determine that a benefit payment was improperly delayed, *id.* (citing *Fotta v. Trustees of United Mine Workers of Am. Health & Retirement Fund*, 165 F.3d 209, 214 (3d Cir. 1998)). This case is readily distinguishable because there are no jurisdictional issues related to the common legal questions and the relief sought is not equitable in nature.

In *Reilly*, the commonality requirement was not satisfied because, although all plaintiffs were said to have been exposed to lead, "whether and to what extent the emissions are said to have affected each class member is not common to all involved . . . [and] common issues of law or fact . . . are altered or changed by individual facts and the situation of each plaintiff." 965 F. Supp. at 598. Here, there is no question as to whether the common legal issues apply to all proposed class members because it is not disputed that the COVID screening process applied to all employees and employees were not paid for time associated with the screening and it is not questioned that employees were not compensated for "walk time."

Defendant also generally asserts that *Ferreras v. American Airlines*, 946 F.3d 178 (3d Cir. 2019), is controlling of the commonality issue in this case. (Doc. 41 at 14.) The Court disagrees.

In *Ferreras*, the class of all non-exempt hourly employees at American's Newark Liberty International Airport was composed of three categories: fleet service employees, mechanics, and passenger service agents. *Id.* at 181. The plaintiffs complained that American violated the New Jersey Wage and Hour Law ("NJWHL"):

> American did not pay its employees for all time worked because its timekeeping system defaults to paying employees based on their work schedules rather than on the time they actually spent working. The plaintiffs also allege that, although American purports to have procedures to compensate employees for unpaid time, management regularly refuses to pay employees for pre- and post-shift work and work done during meal breaks. The claims in the complaint

13

focus on three periods of the workday: (1) while the plaintiffs were clocked in
but before or after their scheduled shift time; (2) during their scheduled meal
breaks; and (3) while off-the-clock.

*Ferreras*, 946 F.3d at 181.

Regarding commonality, the Circuit Court reiterated the two common questions

identified by the district court and explained why neither satisfied the commonality

requirement. The common questions were, "first, whether hourly-paid American employees

at Newark airport are not being compensated for all hours worked, and second, whether

American has a policy that discourages employees from seeking exceptions for work done

outside of their shifts." *Id.* at 185.  The Circuit Court then explained why the questions were

inadequate for certification purposes:

> It is not clear . . . how those questions can "generate common *answers* apt to
> drive the resolution of the litigation." [*Dukes*], 564 U.S. at 350, 131 S.Ct. 2541
> (emphasis in original). The first question cannot be answered by common
> evidence about the timekeeping system because a yes or no answer tells us
> nothing about actual common work habits, if there are any. The plaintiffs will
> still need to go through the process of proving that each individual employee
> worked overtime and is thus entitled to additional compensation, regardless of
> any common evidence about American's timekeeping system.
>
> Similarly, the second question cannot drive resolution of the plaintiffs'
> case because, again, their claims are, at bottom, that they were not paid
> overtime compensation for hours worked, not that American's overarching
> policy regarding exceptions has deprived anyone in particular of
> compensation to which he or she was entitled. Moreover, the record evidence
> only demonstrated that a policy of not paying employees who submitted
> requests for overtime may have existed for one group of employees – the
> mechanics. But the District Court certified subclasses consisting of all non-
> exempt, hourly employees at American's Newark airport station, not just
> mechanics. The passenger service agents and fleet service employees have

different responsibilities and supervisors than the mechanics. Even if one of the groups was affected by such a policy, that would not drive the resolution of the litigation on a classwide basis, *see Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 129 (3d Cir. 2018) (expressing doubt that the conflicting testimony about a company-wide policy from plaintiffs with different managers could establish commonality and predominance), and thus the second common question the District Court identified did not establish commonality.

*Ferreras*, 946 F.3d at 185–86.

The problems associated with the common questions in *Ferreras* are not applicable to the common questions here. Both questions in this case can "generate common *answers apt* to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. The first question, whether Defendant's policy of not paying for time associated with COVID screening violates the PMWA, can be answered generally as to all hourly exempt employees during the relevant time period because they were all subject to mandatory COVID screening. The simple yes or no answer will drive the litigation on this question. Nuances related to the manner in which the mandatory screening was conducted at each facility can be addressed if the common question is answered in the affirmative.

Similarly, the second question, whether Defendant's policy of not paying hourly exempt employees for time associated with walking to and from timeclocks violates the PMWA, can be answered generally because the policy applied to all relevant employees and a simple answer will drive the litigation on this issue. Individual employee walking time will not need to be calculated because the relevant time measurement will be objectively

calculated by Plaintiffs' expert, Robert G. Radwin, who states in his Declaration that, in

making his walking time estimates, he has

> been instructed to utilize the ***most direct route*** to and from each timeclock. As
> such, my estimates will not quantify time or distances associated with
> deviations from the most direct route. . . . In addition, my study will be limited
> to ***uninterrupted*** walking time along the most direct route to and from each
> timeclock. As such, my estimates will not include time associated with
> bathroom breaks, smoke breaks, visits to the break room, or any other events
> that might interrupt the walk.

(Radwin Decl., Doc. 42-1 ¶¶ 10-11; *see also* Doc. 42 at 9.)[2]

Notably, *Ferreras* points to the difference between the type of claims presented by

the plaintiffs and the application of "overarching policy" that applied to all class members. *Id.*

---

[2] The parties agreed by stipulation filed before Plaintiff's Motion for Class Certification that Dr.
Radwin's inspection and analysis will take place after the Court decides whether the case should be
certified as a class action. (Doc. 27 at 2-3.) Importantly, the parties also agreed in their July 17, 2023,
Stipulation that

> Dr. Radwin's estimates of walking time generally pertain to the damages allegedly owed to
> class members and, notwithstanding Defendant's assertion that variations may exist as to
> the routes followed, distance traveled, and/or time spent by putative class members between
> arrival at the facility and clocking-in or between clocking-out and exiting the facility, such
> estimates may not be particularly relevant to the Court's determination of whether this
> litigation should be certified as a class action under Fed. R. Civ. P. 23[.]
>
> . . . .
>
> In opposing class certification, Defendant will not argue that class certification
> should be denied based on purported difficulties, inefficiencies, or uncertainties in
> quantifying class members' walking time, but Defendant reserves the right to argue any facts
> relevant to Plaintiffs' motion for class certification under Fed. R. Civ. 23 and extant case law.

(Doc. 27 at 2-3.) Given these stipulations, Defendant's argument that commonality is lacking because of
the variability of walking times (*see* Doc. 41 at 18-19) appears to be inconsistent with the agreed upon
stipulation.

at 185-86. Plaintiffs' claims and common questions are based on Cargill's overarching policies of 1) not paying for time associated with COVID screening and 2) not paying for walking time to and from timeclocks.[3] A yes or no answer to these questions does not require the Court to know more about "actual common work habits," *id.* at 185. Because evidence shows that all proposed class employees were subject to and affected by the policies at issue, Plaintiffs will not "need to go through the process of proving that each individual employee worked overtime and is thus entitled to additional compensation," *id.*

The foregoing analysis clearly shows that the determination that commonality was lacking in *Ferreras* does not indicate that commonality is lacking in this case. Rather, the application of the considerations deemed important in *Ferreras* to the facts of this case indicates that Plaintiffs satisfy the commonality requirement based on the two common questions posed.[4]

_____

The Stipulation also included the parties' agreement that "Defendant contends that walking time is not compensable as a matter of law and, as such, does not maintain records quantifying the daily or weekly walking time incurred by Plaintiffs and other putative class members." (Doc. 27 at 1-2.)

[4] The Eastern District of California recently considered Rule 23(a)'s requirements in the context of a proposed class where the Walmart policy at issue required

all hourly paid employees to pass a COVID-19 health screening (the "screening") before clocking in for a shift. The policy applied in every Walmart store in California, and if employees refused the screening, they were sent home on Level 1 unpaid leave. (*Id.*). The policy required all hourly employees to "(1) report to a designated location at a Walmart store, (2) possibly wait in line standing six feet apart from other employees, (3) answer the same questions about whether they had any signs or symptoms of the Coronavirus, (4) have their temperature taken, (5) wear a Walmart approved mask, and (6) pass the health examination before clocking-in for the day." Walmart expected employees to clock in as normal after completing the screening. Time clocks were located at varying distances from the screening area, with some sitting "hundreds of feet away." (Doc. 127 at 7 (citing Doc.

—————————————

42)). Walmart paid employees an additional five minutes per shift to compensate for the time spent waiting in line and undergoing the screening.

In this lawsuit, Plaintiff contends that five minutes' worth of pay was insufficient to compensate employees for time spent on the screening process because it did not account for the time spent walking from the testing area to the time clocks. Walmart counters that this time was not compensable, or if it was, the five minutes Walmart automatically paid was sufficient, and any employee could have reported the additional time to Walmart and received payment.

*Haro v. Walmart, Inc.*, Civ. A. No. 1:21-CV-00239-NODJ-SKO, 2024 WL 1160492, at *1 (E.D. Cal. Mar. 18, 2024).

Though the procedural posture (settlement stage) and applicable state labor law differ from the case at bar, *Haro* is notable for the district court's consideration of Rule 23 requirements. *Haro* explained that "Rule 23 'demand[s] undiluted, even heightened, attention' to the certification requirements when class certification is sought only for purposes of settlement." 2024 WL 1160492, at *5 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Accordingly, the district court examined the propriety of certification of the plaintiffs' claim for compensation related to COVID screening under Rule 23. Regarding commonality, *Haro* found that

Plaintiffs satisfy the commonality requirement in several respects. First, Plaintiffs' claims are all premised on the implications of Walmart's screening policy, and common questions related to the application of a uniform policy generally satisfy Rule 23(a)(2). *Pryor v. Aerotek Scientific*, LLC, 278 F.R.D. 516, 525 (C.D. Cal. 2011) ("[T]he fact that an employee challenges a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation."); *see also Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 205 (N.D. Cal. 2009) (finding commonality where plaintiff proffered evidence of a company-wide policy regarding donning and waiting time). While the Plaintiffs may have spent varying amounts of time of the clock, commonality may be found through "[t]he existence of shared legal issues with divergent factual predicates." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). As Plaintiffs note, the Plaintiffs' claims will all hinge on common questions of law, such as (1) whether Walmart's policy to perform the screenings off-the-clock violated California Labor Code §§ 204, 1194, 1197; (2) whether Walmart's policy to classify the time spent walking to the time clocks after completing the screening as non-compensable time violated California Labor Code §§ 204, 1194, 1197, and (3) whether the format and information on Walmart's wage statements violated California Labor Code § 226(a). This showing is adequate to meet the requirements of Rule 23(a)(1).

2024 WL 1160492, at *7.

Defendant's additional arguments to the contrary are unavailing. Defendant asserts that "Plaintiffs' insistence that there is *a* . . . common and overarching legal issue which covers ***both screening and walking time*** is misplaced for the simple reason that there are two factual legal issues presented in Plaintiffs' statement [which] present different factual and legal questions and the legal answer to one could be different from the legal answer to another." (Doc. 41 at 16.) Defendant then hypothesizes that "[i]f the legal answer to each of those questions can be different, then the answer to the common question presented by Plaintiffs cannot be answered 'in one stroke'" and concludes that "[o]n that basis alone, commonality is not met for a group including screening and walking time." (*Id.*) Defendant's argument fails because, exercising its discretion to frame issues, the Court has found that Plaintiffs' overarching legal issue contains two common questions: one as to time associated with COVID screening and the other as to time associated with walking to and from timeclocks. *See supra* p. 11.

Defendant next contends that there is no commonality because individual inquiries prohibit the use of representative evidence to prove overtime violations. (Doc. 41 at 16.)

---

Commonality related to a claim for pre-shift and post-shift walking time has also been found in cases within the Third Circuit and elsewhere. *See, e.g., Davis v. Target Corp.*, Civ. A. No. 23-89, 2023 WL 8373162, at *3 (E.D. Pa. Dec. 1, 2023); *Alfonso v. FedEx Ground Package System, Inc.*, Civ. A. No. 3:21-01644, at *12 (D. Conn. Mar. 8, 2024). The Court acknowledges Defendant's argument against consideration of *Davis*, relying on *Ferreras*, 946 F.3d 178, and distinguishing *Tyson Foods, Inc., v. Bouaphakeo*, 577 U.S. 442, 453 (2016). For the reasons discussed in the text and previous footnote regarding the court's assessment of the merits of a claim, *see supra* p.5 n.1., Defendant's argument is not appropriately considered here.

19

Defendant again analogizes the "substantial variability" found in *Ferreras* with the screening and walking time here. (*Id.* at 17.) As set out above, this case is easily distinguishable. *See supra* pp. 13-17.

As to COVID screening time, Defendant asserts that, given the variations in screening time, "Plaintiffs will have to present individual evidence regarding any time employees spent excluded from work, while still being paid, to determine if the employee actually suffered any overtime violations. Accordingly, commonality is not appropriate." (*Id.* at 18.) The problem with this argument is that a question about the time an individual employee spent at work only arises after the common question about the compensability of screening time under the PMWA is answered. As set out above, *see supra* p. 10, as long as the class was subjected to the "same harmful conduct by the defendant, Rule 23(a) will endure many legal and factual differences among the putative class members." *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d at 397; *see also Rodriguez*, 726 F.3d at 382-83. Here, the proposed class was subjected to the same harmful conduct regarding COVID screening time: all relevant employees were required to undergo COVID screening before their shift and were not compensated for the associated time. Variations as to how the required screening was accomplished at each location does not undermine the commonality of the question of whether Defendant's failure to compensate employees for the required screening time violated the PMWA.

Further, problems identified by Defendant associated with individual differences regarding time for which employees were paid when they were excluded from work (Doc. 41 at 18) do not undermine commonality in that such information should be available in digitized payroll records which presumably differentiate between time paid for a workday worked and time paid for a workday when the worker was absent from work. In any case, the potential need for such information cannot undercut the common question on this issue in that hours worked during a relevant period is commonly a calculation in the distribution of funds. *See, e.g., Haro v. Walmart, Inc.*, Civ. A. No. 1:21-CV-00239-NODJ-SKO, 2024 WL 1160492, at *3.

Defendant's argument regarding the need for individual information based on variability in walking time is without merit. As discussed above, the analysis outlined by Plaintiffs' expert, Dr. Radwin, will calculate walking time by excluding variables asserted by Defendant. *See supra* pp. 15-16.

Defendant's assertion that there is no commonality because there is no common policy regarding walking time (Doc. 41 at 19) is without merit. Stating that it has no common policy related to walking time overlooks the fact that Cargill uniformly does not compensate exempt, hourly employees for time walking to and from timeclocks within a facility. Cargill's related assertion that an individualized assessment is necessary to determine an answer to the common question has been addressed and discounted above.

21

Defendant's assertion that there is no common policy related to screening time overlooks the broad policy directive that all employees were to undergo COVID screening before their shift and that no employees were compensated for related time. As set out above, *see supra* pp. 2-3, in March 2020, Cargill implemented COVID-related measures that included temperature screening for all who entered the worksite and required disclosure of any COVID symptoms. (Def.'s Ans., Doc. 6 ¶¶ 17, 21; Pls.' Ex. H.) In September 2021, Cargill reported that it had developed screening questions that were asked before entering its protein plants and it had initiated temperature screening for employees at arrival. (Doc. 37 at 7; Pls.' Ex. J, Doc. 36-12 at 4) On April 24, 2022, Cargill drafted the "COVID-19 Active Screening and Temperature Scans Process – US Protein" ("Screening Directive") and distributed it to the three Pennsylvania facilities. (Doc. 41 at 3; Pls.' Reply Br., Doc. 42 at 4; Pls.' Ex. G, Doc. 38-1.) COVID screening took place before employees punched-in at the timeclocks inside the plants, and Cargill did not document or track any time related to employees' participation in the COVID screening process. (Doc. 37 at 8.) Evidence shows that employees had to wait in line before being screened at various locations. (*See, e.g.*, Pls.' Ex. L, Doc. 36-14; Pls.' Ex. M, Doc. 36-15.) As noted regarding walking time, proposed class employees were subject to the same conduct which allegedly violated the PMWA— they were not paid for time associated with COVID screening. Differences in how the overarching screening policies were implemented at each facility do not negate Defendant's general directives regarding screening that applied to the three Pennsylvania facilities at

issue. Therefore, Defendant's assertion that there was no common policy related to COVID screening time is without merit.

Finally, Defendant contends that there is no commonality because the number of employees who experienced screenings is not the same as the number of employees who experienced alleged walking time violations. Because walking time and COVID screening time are two separate common questions, *see supra* p. 11, there is no need for the same number of employees to have experienced the alleged violations of the PMWA. Therefore, Defendant's argument on this issue fails.

In sum, the commonality requirement is met in this case. Plaintiffs have identified two common questions of law: 1) whether time associated with pre-shift COVID screenings qualifies as compensable "hours worked" under the PMWA; and 2) whether time associated with pre-shift and post-shift walking to and from intra-plant timeclocks qualifies as compensable "hours worked" under the PMWA. Plaintiffs have also identified policies promulgated by Defendant that applied to the three Pennsylvania facilities: 1) Defendant does not pay employees for any time associated with required COVID screening; and 2) Defendant does not pay for walking time to and from timeclocks. The Court has concluded that the questions of law are capable of classwide resolution without consideration of individual differences, i.e., for each of the common questions, the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

## 3. Typicality

The typicality element requires Plaintiffs to prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Even though commonality and typicality "tend to merge… they are distinct requirements under Rule 23." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality evaluates the sufficiency of the class itself while typicality evaluates the sufficiency of the named plaintiff. *Id.* Typicality allows the Court to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus,* 687 F.3d at 598.  In order to satisfy typicality:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough,* 589 F.3d at 599.

> Plaintiffs assert that Rule 23(a)'s typicality requirement is met because
>
> Plaintiffs' legal theory – that time associated with pre-shift COVID screenings and pre-shift and post-shift walking to and from timeclocks constitute compensable "hours worked" under the PMWA – is entirely aligned with the interests of other class members. If Plaintiffs win on the merits, all class members will be entitled to unpaid overtime wages. Plaintiffs do not seek any damages that differ from the damages available to other class members.

24

(Doc. 37 at 15-16.)

Defendant does not dispute Plaintiffs' rationale. Rather, Defendant again points to

the individual differences discussed in the commonality analysis. (Doc. 41 at 24.) Defendant

relies on an Eighth Circuit case for the proposition that "'[t]he presence of a common

**_legal theory_** does not establish typicality when proof of a violation requires

individualized inquiry.'" (_Id._ (quoting _Elizabeth M. v. Montanez_, 458 F.3d 779, 787 (8th Cir.

2006)) (emphasis added by Defendant).)

For the reasons discussed in the preceding section of this Memorandum Opinion,

the Court has determined that individualized inquiry related to Plaintiffs' common questions

does not undermine the presence of common legal questions and Defendant's common

policies. Therefore, the Court declines to apply the Eighth Circuit's statement to the facts of

this case and finds that the unrefuted assessment proffered by Plaintiffs shows that the

typicality requirement is satisfied in this case.

## 4. Adequacy

Rule 23(a)(4) requires plaintiffs to prove that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The primary purpose

of this prerequisite

> is "to determine whether the named plaintiffs have the ability and the incentive
> to vigorously represent the claims of the class." _In re Cmty. Bank of N. Va._
> _Mortg. Lending Pracs. Litig._, 795 F.3d 380, 393 (3d Cir. 2015). Thus, for a class
> representative to be adequate, she must "have a minimal degree of knowledge
> about the case and have no conflict of interest with class counsel and members

of the class[.]" *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (cleaned up); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) ("[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."). "A conflict must be fundamental to violate Rule 23(a)(4)." *Dewey*, 681 F.3d at 184 (internal quotation marks omitted).

*Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 209–10 (3d Cir. 2022).

Plaintiffs assert that the adequacy requirement is satisfied because

[n]either Davidson nor Villa pursues any legal claims that conflict with the claims asserted on behalf of the class members. On the contrary, the instant lawsuit consists of a single PMWA claim seeking compensation for time associated with COVID security screenings and intra-plant walking to and from the timeclocks. Moreover, Plaintiffs' ability and incentive to vigorously represent other class members is confirmed by their active participation in this litigation. Plaintiffs have answered written discovery requests and testified at in-person depositions. Finally, Plaintiffs' counsel are experienced employment rights lawyers who have collectively litigated many wage lawsuits.

(Doc. 37 at 16-17.)

Based on Plaintiffs' unrefuted representations and the Court's previous findings regarding commonality (including that the single claim contains two subparts giving rise to separate common questions), the Court concludes that Plaintiffs have satisfied the adequacy requirement.

With this determination, all Rule 23(a) requirements are met. Therefore, the Court will proceed with the Rule 23(b) analysis.

B. <u>Rule 23(b)(3)</u>

To satisfy Rule 23(b)(3), a class must have already satisfied the requirements of

Rule 23(a). *See* Fed. R. Civ. P. 23(b). If a class satisfies the Rule 23(a) requirements, it can

be certified under Rule 23(b)(3) if the Court finds that "the questions of law or fact common

to class members predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority, a

Court should look to pertinent matters including:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims
> in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

 Fed. R. Civ. P. 23(b)(3)(A)-(D).

**1. Predominance**

To establish that "questions of law or fact common to class members predominate

over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), a plaintiff

must identify the issues that are common to the putative class and prove that those issues

are "more prevalent or important than the non-common, aggregation-defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). *Ferreras* stressed that

> [c]ourts must "give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member[.]"

946 F.3d at 185 (quoting *Tyson*, 577 U.S. at 453.)

"The commonality and predominance requirements are closely linked. But the Rule 23(b)(3) predominance requirement is 'far more demanding than the commonality requirement" found in Rule 23(a).'" *Id.* (quoting *In re Hydrogen Peroxide*, 552 F.3d at 311 (internal quotation marks omitted)). If the commonality requirement cannot be met, then the more stringent predominance requirement obviously cannot be met either. *Id.* (citing *Amchem*, 521 U.S. at 623-24)).

An individual issue requires "evidence that varies from member to member" whereas a common issue is one where "the same evidence will suffice for each member." *Ferreras*, 946 F.3d at 185. As long as "one or more of the central issues in the action are common to the class and can be said to predominate," the requirement is satisfied, even if "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*; 577 U.S. at 453. The putative class only needs to prove that common questions predominate, "not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut*

*Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). To meet the requirement that common issues are more important, it suffices to show "that the plaintiffs' claims are capable of common proof at trial." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020).

Plaintiffs assert that the predominance requirement is satisfied because common questions predominate in this case, the common questions are based on Defendant's policy applicable to all potential class members, and *Tyson Foods* and numerous District Court and Pennsylvania cases have found predominance in similar circumstances. (Doc. 37 at 17-26.) Defendant relies on arguments proffered in support of its position that Plaintiffs did not satisfy the commonality requirement of Rule 23(a), stating that "[b]ecause commonality does not exist, neither does predominance." (Doc. 41 at 26.)

Here, the Court has given the requisite "careful scrutiny to the relation between common and individual questions," *Tyson*, 577 U.S. at 453, and concludes that Plaintiffs satisfy the more stringent predominance inquiry for reasons similar to those found in the commonality analysis. Defendant has an undisputed policy that it does not pay potential class members for time associated with COVID screening and time spent walking to and from timeclocks inside its facilities. *See supra.* Plaintiffs assert that the proposed class members are entitled to compensation pursuant to *Heimbach. See supra* p. 5 & n.1. A finding of predominance in theses circumstances is consistent with *Tyson's* conclusion that the District Court did not err in finding predominance and certifying the class when the

potential class had not been paid for donning and doffing time. 577 U.S. 442. It is also

consistent with the District Court's conclusion in *Davis v. Target Corp.*, Civ. A. No. 23-89,

2023 WL 837312, at *4 (E.D. Pa. Dec. 1, 2023), that the defendant's failure to compensate

the plaintiffs for walking time "is undoubtedly a common, unifying, and overwhelmingly

significant question in this case, and it involves textbook application of class resolution." *Id.*

The COVID-screening case previously identified in the margin where the plaintiffs

challenged the defendant's failure to adequately compensate them for time associated with

a mandatory screening policy, *see supra* p.17 n.4, also supports a finding of predominance

with its conclusion that the predominance requirement was met because "[c]lass actions in

which a defendant's uniform policies are challenged generally satisfy the predominance

requirement of Rule 23(b)(3)." *Haro v. Walmart*, 2024 WL 1160492, at *9 (listing cases).

Finally, while individual questions exist as to damages in this case, there is no doubt that

the common claims are "capable of common proof at trial." *Lamictal*, 957 F.3d at 191.

## 2. Superiority

The final requirement to satisfy Rule 23(b)(3) is that the "class action is superior to

other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

P. 23(b)(3).

> The superiority requirement asks a district court "to balance, in terms of fairness
> and efficiency, the merits of a class action against those of 'alternative available
> methods' of adjudication." *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 632
> (3d Cir.1996), *aff'd,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Fed. R. Civ. P. 23(b)(3) instructs that the matters pertinent to this inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

> *Id.*

*In re Cmty. Bank*, 418 F.3d at 309.

As to the first factor, Plaintiffs maintain that this is not a lawsuit where the individual class members have a strong interest in controlling the litigation: it is not a case where "the individual claims are emotionally charged or involve significant damages amounts" (Doc. 37 at 26 (citing William B. Rubenstein, *Newberg & Rubenstein on Class Actions* – 6th Ed. at §4:69)); on the contrary, "while potential aggregate damages are significant, the overtime wages owed to any individual class member are not" (*id.* at 27). Relying on *Amchem's* conclusion that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," 521 U.S. at 617, Plaintiffs assert that this case "is precisely the type of lawsuit Rule 23's class action is intended to facilitate." (*Id.*)  The Court agrees with this assessment (which Defendant does not challenge (*see* Doc. 41 at 34)), and concludes the first factor weighs in favor of certification.

The second and third factors also weigh in favor of certification. Plaintiffs' assertions that "no related litigation exists" (Doc. 37 at 27) and that "litigating all class members' claims in this Court makes good sense, since all of Cargill's Pennsylvania plants are located within this judicial district" (*id.*) are unchallenged.

As to the fourth factor, Plaintiffs contend that "no significant manageability issues exist." (*Id.*) Defendant responds that

> difficulties in managing the class action . . . "counsels strongly against finding a class action would be superior" where there are a "multitude of individualized issues" which would "entail complicated mini-litigations within the class action itself." [*Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008)]. As discussed regarding commonality and predominance, the individualized issues here prevent a finding of superiority.

(Doc. 41 at 34.)

Just as the Court has found that the requirements of commonality and predominance have been satisfied despite the individual issues presented in this case regarding damages, the Court finds that the individual issues related to damages in this case can be managed if and when encountered as the litigation proceeds. Therefore, this factor also weighs in favor of certification.

Because the Court has found that all superiority factors weigh in favor of certification and Plaintiffs have satisfied the Rule 23(a) prerequisites as well as Rule 23(b)(3)'s predominance requirements by a preponderance of the evidence, the Court concludes that the proposed class should be certified.

**C. Other Matters**

**1. Appointment of Class Counsel**

The Court having determined that certification of the proposed class is appropriate,

the Court must appoint class counsel pursuant to Rule 23(g)(1). Rule 23(g)(1)(A), requires

the Court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in
> the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and
> the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). A Court may further "consider any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." *Id*. at

23(g)(1)(B).

Here, Defendant does not oppose class certification and the record supports

appointment of Plaintiffs' counsel as class counsel. Counsel has demonstrated their ability

to identify and investigate potential claims, their knowledge of the applicable law, their

willingness to commit resources to representing the class. Plaintiffs' counsel also has

experience in handling class and collective actions related to federal and state wage laws.

(*See* Winebrake Decl., Pls.' Ex. B, Doc. 36-4; Macher Decl., Pls.' Ex. C, Doc. 36-5;

Schalman-Bergen Decl., Pls.' Ex. D, Doc. 36-6.) Therefore, the Court will appoint Plaintiffs'

counsel--Winebrake & Santillo, LLC, the Community Justice Project, and Lichten & Liss-

Riordan, P.C.,--as class counsel.

## 2. Proposed Class Notice and Protocols

In response to Plaintiffs' assertion that their proposed class notice and protocols

should be approved (Doc. 37 at 29), Defendant responds that the "proposed notice and

timeline is premature and inappropriate for a number of reasons" (Doc. 41 at 35). Defendant

requests "to the extent any class is certified, the Court orders the parties to meet and confer

regarding an appropriate notice and schedule which the parties shall submit to the Court."

(Doc. 41 at 35.) In their reply brief, Plaintiffs do not address Defendant's argument or

request.

The Court agrees with Defendant that a "meet and confer" approach to resolving the

notice and timeline issues is preferable to a Court determination made after full briefing.

Therefore, the Court will not further discuss the notice and protocols proposed by Plaintiffs,

and instead will direct the parties to submit an appropriate notice and schedule after they

have had an opportunity to confer.

## IV. Conclusion

For the reasons discussed above, Plaintiffs' Motion for Class Certification (Doc. 36)

will be **GRANTED** and Plaintiffs' request that Plaintiffs' counsel be appointed class counsel

will be **GRANTED**. Plaintiffs' request that the court approve their proposed notice and notice protocols will be held in abeyance. A separate Order will be entered.

_____
Robert D. Mariani
United States District Judge